UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELESTE SIMONE CARRINGTON,<br>Petitioner,<br>v.<br>ANISSA DE LA CRUZ, Warden of the Central California Women's Facility,<br>Respondent. | Case No. 10-cv-04179-RS<br>**ORDER DENYING MOTION FOR LEAVE TO AMEND**<br>RE: ECF DKT. NO. 94 |

Petitioner Carrington is serving a death sentence for capital murders committed in 1992. On March 1, 2013, he[1] finalized his petition for a writ of habeas corpus ("Petition") in this Court. ECF Dkt. No. 22. The Court stayed those proceedings on September 5, 2014, pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), so that Petitioner could return to state court and exhaust the unexhausted claims in the Petition. On January 1, 2026, Petitioner filed a Motion for Leave to Amend Habeas Petition and Preserve Stay ("Motion") (ECF Dkt. No. 94), which is pending before the Court. For the following reasons, the Motion is denied.

**BACKGROUND**

A jury convicted Petitioner in 1994 of the first-degree murders of Victor Esparza and Carolyn Gleason, finding as true the special circumstances of burglary, robbery, and multiple murder. *People v. Carrington*, 47 Cal. 4th 145, 154 (2009). The jury also found him guilty of the second-degree attempted murder with the infliction of great bodily injury of Dr. Allan Marks, in addition to three counts of robbery, eight counts of commercial burglary, and the use of a firearm

[1] Petitioner's preferred pronouns are he and him. At the time of his trial, Petitioner was referred to with she/her pronouns. The Court will use Petitioner's preferred pronouns unless clarity in referring to the original trial is required.

in the commission of the offenses. *Id.* After the penalty phase, the jury returned a death sentence. *Id.* The California Supreme Court affirmed Petitioner's convictions and sentence on July 27, 2009. *Carrington*, 47 Cal. 4th 145, *cert. denied* 130 S. Ct. 2373 (2010). The state high court summarily denied Petitioner's first state habeas-corpus petition on September 15, 2010, *Carrington (Celeste Simone) on H.C.*, S142464, Supreme Ct. Mins., Sept. 15, 2010), and affirmed the trial court's denial of his second petition as successive on May 14, 2025, *In re Carrington*, A166055, 2025 WL 1392277 (May 14, 2025).

## ANALYSIS

In the instant motion, Petitioner asks the Court for leave to amend the Petition so that he may include a new claim that the State transgressed Petitioner's constitutional right to Due Process by introducing unduly prejudicial evidence based on sex stereotypes ("Claim Thirty-Two"). ECF Dkt. No. 94-2 at 1. Specifically, Petitioner claims that the State violated a rule introduced in *Andrew v. White*, 60 U.S. 86 (2025), when it argued that Petitioner deserved a harsh sentence because he "was freakishly deviant from typical gender norms," adducing irrelevant evidence about Petitioner's height and weight, affect, style of dress, sexual orientation, and movement to distinguish Petitioner from typically feminine-presenting persons. ECF Dkt. No 94-1 at 370-72.

## I. APPLICABLE LAW

### A. Leave to Amend

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") dictates that the Federal Rules of Civil Procedure ("FRCP") apply to habeas petitions in the district court. 28 U.S.C. § 2242; *Mayle v. Felix*, 545 U.S. 644, 655 (2005); *see* Fed. R. Civ. P. 81(a)(4) (stating that the FRCP "apply to proceedings for habeas corpus"). Rule 15(a) provides, in relevant part, that a petitioner may amend his or her pleading once within twenty-one days of the filing of a responsive pleading or by consent of the respondent or leave of the court. Fed. R. Civ. P. (a). "The court should freely give leave when justice so requires." *Id.* The United States Court of Appeals for the Ninth Circuit has advised that "'this policy is to be applied with extreme liberality.'" *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band*

*of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). Nonetheless, a court should consider several factors to determine if justice requires allowing the amendment, including "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." *Waldrip v. Hall*, 548 F.3d 729, 732 (9th Cir. 2008) (internal quotation marks omitted).

Respondent argues that the Court should deny leave to amend primarily because the amendment would be futile in multiple ways. ECF Dkt. No. 96 at 9-17. First, Respondent claims that Petitioner's proposed new claim is untimely and does not relate back to the claims in the original petition. *Id.* at 9-14. Next, Respondent avers that Claim Thirty-Two is unexhausted and that it would be procedurally barred by the state court during exhaustion proceedings.[2] *Id.* at 14-15. Additionally, Respondent asks the court to disallow the amendment because Petitioner could have made Claim Thirty-Two during his direct appeal and thus has engaged in undue delay. *Id.* at 15. Finally, Respondent argues that staying the case again to allow for exhaustion would be futile because Claim Thirty-Two is "plainly meritless." *Id.* at 20-22.

**B. Timeliness**

AEDPA provides a one-year limitations period during which a petitioner may assert claims after his or her conviction becomes final in the state court. 28 U.S.C. § 2244(d)(1)(A). The parties agree that Petitioner filed his original habeas petition within the limitations period and agree that any new claim must "relate back" to a claim in the original petition to be considered timely. ECF Dkt. No. 96 at 10; ECF Dkt. No. 99 at 2; *see* Fed. R. Civ. P. 15(c)(1); *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Federal Rule 15 provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Relation back requires that the new claim share a "common core of operative facts" with the original claims. *Mayle*, 545 U.S. at 659. A proposed

[2] Petitioner concedes that Claim Thirty-Two is unexhausted and seeks an extension of the *Rhines* stay in this Court pending exhaustion during the state habeas proceeding he initiated on January 21, 2026.

new claim does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

## II. DISCUSSION

### A. Timeliness

To determine if a claim in an amended petition relates back to the original pleading, a court must determine the "core facts [that] underlie th[e] claim[]" and then "look to the body of the original petition and its exhibits to see whether the original petition set out or attempted to . . . set out a corresponding factual episode." *Ross v. Williams*, 930 F.3d 1160, 1167 (9th Cir. 2020). In Claim Thirty-Two, Petitioner asserts that the prosecutor introduced unduly prejudicial facts to argue that Petitioner deserved a death sentence because he defied stereotypes based on sex and gender roles. *See* ECF Dkt. No. 94-1 at 368. He supports that claim by referring to facts the State introduced at trial, including: Carrington's non-feminine body size, masculine clothing, manly interests, and masculine way of moving and living, emphasizing Petitioner's sexuality and gender presentation. *Id.* at 370-72. The prosecutor's intention throughout the trial, Petitioner argues, was to infect the jury with the idea that Petitioner deserved the worst punishment because he did not fit society's expectations of how a woman should appear and act. *Id.* at 371-74.

The question of whether Claim Thirty-Two relates back to the original petition is a close one. A generous reading of the entire petition could allow relation back because Claim Thirty-Two arises out of the prosecutor's characterization of Petitioner during trial, conduct that Petitioner relies on in some of his original claims. More specifically, Petitioner supported Claims Two and Twenty-Two with some of the same operative facts regarding the prosecutor's introduction of evidence and argument that Petitioner lived and behaved unlike a typical woman.

In Claim Two, Petitioner alleges that his trial counsel were ineffective, in part, for not challenging the prosecutor's argument that Petitioner was a "thrill killer" and introduction of evidence in support. *Id.* at 118-54. Petitioner argues that the prosecutor characterized Petitioner as "a remorseless, cold-blooded, thrill-seeking killer who executed her victims while they were on their knees." *Id.* at 119. In support of this characterization, the prosecutor introduced as exhibits Petitioner's interviews with the police. In describing his emotions before shooting Esparza,



United States District Court
Northern District of California

Petitioner stated:

> then its [sic] like overwhelming thing here you have a pistol in your hand, I mean, and he's scared to death of it, you know, that a woman of power was there and then he said well is, like, you have the power to take this man's life away from him okay and all of that hit me at one time . . . . And yeah, it was an excitement there of having the gun, being able to use it if need be or what have you and having someone scared. It didn't matter if it was a man or a woman, but having someone scared.

*Id.* at 138 (quoting AG000524). Petitioner argues that his counsel were ineffective for not challenging "the prosecutor's use of isolated remarks made . . . during the course of [his] interrogation to argue that Carrington was a 'thrill-killer' who enjoyed killing [his] victim." *Id.* at 139. Although the prosecutor's characterization of Petitioner as a "thrill-killer" did not rely on obvious gender stereotypes, the introduction of Petitioner's statements to the police included many of the facts that Petitioner argues the prosecutor used to insinuate to the jury that Petitioner did not behave like a woman should. The prosecutor emphasized this unusual behavior in closing argument:

> This is not about a troubled woman who goes out and spontaneously kills people. This is a woman who was manipulative, cunning, who is intelligent, who knew exactly what she was doing. You've heard her words, you know what the evidence is, as you know the slaughter, the trail of slaughter that she left behind.

*Id.* at 146 (quoting AG016664). During closing argument in the penalty phase, the prosecutor continued the theme: "These weren't just murders during the course of robberies and burglaries. There were more serious things going on, and we'll talk about that, being on their knees, being shot at close range. Cold-blooded, and the thrill of it all in her statement, enjoying it." *Id.* at 149 (quoting AG01824798).

In Claim Twenty-Two, Petitioner argues that the prosecutor committed misconduct by presenting false evidence to support the "thrill killer" theory. *Id.* at 312. Petitioner relies on much of the same evidence as he used to support Claim Two. *Id.* at 313-315. The prosecutor, according to Petitioner, committed misconduct by "intentional[ly] mischaracterize[ing]" Petitioner's "statements to law enforcement," emphasizing certain comments to insinuate that Petitioner believed that holding a gun on an unarmed person on his knees made him "a woman of power," strong beyond his assigned gender. *Id.* at 315. The prosecutor prepared the jury for viewing

Petitioner as a "thrill killer" in her guilt-phase opening statement: "defendant in cold blood intentionally executed two human beings by shooting them in the head at very close range while they were on their knees, while they were being robbed and while the buildings in which they were in were being burglarized." *Id.* at 318.

Read in the context of the introduction of facts about the ways in which Petitioner was not a typical woman, the prosecutor's guilt-phase argument could be understood as supported by many of the same operative facts as Claim Thirty-Two. The prosecutor's characterization of Petitioner as a remorseless, gangster-style executioner relied on the theory that the victims were on their knees, a theory that Petitioner argues was based on false evidence. In closing, the prosecutor pulled it all together:

> Power and control is what motivates her, along with the motive to steal and rob. Is it a coincidence that we have a thrill killer on our hands here, who talks about the excitement of having someone at her mercy, having someone's life in her hands? . . . She thrived on it. He's on his knees, begging for his life. It's the ultimate power and control experience for someone who wishes to dominate another person. Those are all in her statements. Is that a coincidence? No. It's absolutely consistent with her method of operation in this case.

*Id.* at 328-29. The prosecutor continued to characterize Petitioner as someone out of the ordinary in the context of his assigned gender: "why is she killing him? Premeditated and deliberate murder. Power and control. A woman of power, with someone very scared in front of her. She's thrilled by it." *Id.* at 329. The prosecutor's final characterization of Petitioner as "a predator who enjoyed slaughtering human beings" removed Petitioner from the realm of typical womanhood altogether. *Id.* at 331.

A broad reading of the claims set forth in the original petition supports Petitioner's argument that Claim Thirty-Two relates back and is thus timely. Claims Two and Twenty-Two rely largely on the prosecutor's main argument that Petitioner killed for the excitement it brought. Although not a direct attack on whether Petitioner fit the stereotype of a "good woman," the prosecutor's characterization of Petitioner required evidence that Petitioner subverted sexual and gender stereotypes to become an executioner who craved power and took life with no regard for life itself.

United States District Court
Northern District of California

**B. Futility**

Assuming that Claim Thirty-Two relates back to the original petition and may thus be considered timely, Petitioner's request to amend the Petition fails because it is futile. Contrary to Petitioner's assertions, *Andrew* did not establish new federal law concerning the introduction of evidence; it merely made use of a long-established rule of due-process law. That law was available to Petitioner at the time of his trial and direct appeal. California state law prohibits a reviewing court from considering claims first raised in habeas corpus that could have been raised on direct appeal. *Ex parte Dixon*, 41 Cal. 2d 756, 759 (1953).

Because the state court will rule that Claim Thirty-Two is barred under *Dixon*, this Court cannot review it. A federal court considering the habeas petition of a state prisoner may not review a claim rejected by a state court "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A state law ground is considered "adequate" if it is "firmly established and regularly followed," *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). The Supreme Court has ruled that the *Dixon* procedural bar is both adequate and independent, *Johnson v. Lee*, 578 U.S. 605, 606 (2016) (per curiam); this Court, therefore, may not review claims that the California Supreme Court has rejected pursuant to *Dixon*.

A close reading of *Andrew* and the cases that cite it makes clear that the Supreme Court was not announcing a new rule of law concerning the prejudicial introduction of evidence during trial. The petitioner in *Andrew* was convicted of murdering her husband. During trial, "[t]he State spent significant time . . . introducing evidence about Andrew's sex life and about her failings as a mother and wife, much of which it later conceded was irrelevant." *Andrew*, 604 U.S. at 87. The prosecutor discussed much of this irrelevant evidence, even displaying the petitioner's underwear, during the closing argument. Petitioner argues that the particular facts involved in *Andrew* create new law, but he is incorrect. Focusing on the prosecution's comparison of Andrew and her behavior with the gender stereotype of a "good woman," the Supreme Court determined that the trial court had unreasonably applied federal law that the Court had clearly established decades ago:

United States District Court
Northern District of California

"[b]y the time of Andrew's trial, this Court had made clear that when 'evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'" *Id.*, at 88 (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)).

In coming to its holding in this habeas-corpus case subject to AEDPA, the Supreme Court made sure to explain that it was relying on the general legal principle established in *Payne* regarding the potential violation of due process through the introduction of unduly prejudicial irrelevant evidence as the "clearly established federal law" at issue. The Court first clarified the nature of a "holding": "[w]hen the Court relies on a legal rule or principle to decide a case, that principle is a 'holding' of the Court for purposes of AEDPA." *Id.*, at 92 (citing *Lockyear v. Andrade*, 538 U.S. 63, 71-72 (2003)). "[C]learly established federal law," then, "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyear*, 538 U.S. at 71-72. The Court recognized that the principle relied on in *Payne*—"that the Due Process Clause can in certain cases protect against the introduction of unduly prejudicial evidence at a criminal trial"—predated the ruling in *Payne*, which "thus broke little new ground." *Andrew*, 604 U.S. at 93. "General legal principles," the Court explained, "can constitute clearly established law for purposes of AEDPA so long as they are holdings of this Court." *Id.* at 94.

The Court emphasized in *Andrew* that the clearly established federal law it was evaluating was not one limited to or defined by a specific set of facts. "[C]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *White v. Woodall*, 572 U.S. 415, 427 (2014). In *Payne*, the Court was addressing whether the introduction of victim-impact evidence violated the petitioner's due-process rights. *Payne*, 501 U.S. at 825. The *Andrew* court noted other cases in which it recognized that the rule it had elucidated in *Payne* was a general legal principle used to evaluate due-process violations relating to the introduction of evidence. *See Kansas v. Carr*, 577 U.S. 108, 123 (2016) (identifying the potentially prejudicial introduction of co-defendant's mitigation evidence as a due-process issue rather than an Eighth Amendment question); *Romano v. Oklahoma*, 512 U.S. 1,

12 (1994) (considering the introduction of evidence that the petitioner had been sentenced to death in a prior case). None of these cases involved the introduction of facts regarding gender and sex stereotypes.

The instructions the *Andrew* Court gave to the Tenth Circuit Court of Appeals on remand provide the clearest indication that the Court was not establishing a new rule of law specific to the facts in *Andrew*. The Court instructed the appellate court to "conduct th[e] inquiry" of whether the state court unreasonably applied the principle in *Payne* in the first instance: "[s]pecifically, the question now is whether a fairminded jurist reviewing this record could disagree with Andrew that the trial court's mistaken admission of irrelevant evidence was so 'unduly prejudicial' as to render her trial 'fundamentally unfair.'" *Andrew*, 604 U.S. at 96 (quoting *Payne*, 501 U.S. at 825). The Court did not instruct the appellate court to review the state court's decision with respect to a specific type of gender and sex stereotyping. For *Andrew*, "a general constitutional rule already identified in the decisional law [applied] with obvious clarity to the specific conduct in question." *Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (internal quotation marks omitted).

All recent case law citing *Andrew* has referred to it as an example of the general legal principle expressed in *Payne* and not, as Petitioner argues, for its introduction of any new rule of law about the use of evidence to play into a jury's opinions about stereotypical gender and sex roles. Several courts cited *Andrew* specifically as a statement of the general due-process principle expressed in *Payne*. *Read v. May*, 134 F.4th 455, 463 (6th Cir. 2025) (recognizing that *Andrew* "explained that the due-process language [from *Payne*] invoked by the Tenth Circuit [in Andrew's case] was 'clearly established law'"); *Johnson v. Thornell*, No. CV-18-00889-PHX-MTL, 2025 WL 3204780 at *47 (D. Ariz. Nov. 17, 2025) (slip op.) (examining whether "a trial can be rendered fundamentally unfair by the 'mistaken admission of irrelevant evidence'" (quoting *Andrew*, 604 U.S. at 96)); *Creech v. Valley*, No 1:24-cv-00485-GMS, 2025 WL 3158394 at *4 (D. Ariz. Nov. 12, 2025) (slip op.) (In *Andrew*, "[t]he Supreme Court reversed, explaining that legal principles such as due process constitute clearly established federal law and are 'fundamental enough' to apply when 'new factual permutations arise.'" (quoting *Andrew*, 604 U.S. at 95)). None of these cases involved the introduction of character or other evidence evoking gender or sex

stereotypes.

In *Phansongkham v. Guzman*, No. 21-cv-01566-LL-MMP, 2025 WL 2823127 (S.D. Cal. Oct. 3, 2025) (slip op.), the Southern District of California more directly relied on *Andrew* to evaluate whether the admission of irrelevant evidence regarding the petitioner's participation in gang activity was a due-process violation. Although the murder in this case was gang-related, the petitioner claimed that that the admission of evidence of his participation in gang activity unrelated to the murder was unduly prejudicial, making his trial unfair. The court recognized that the Supreme Court in *Andrew* "acknowledged it had never expressly 'invalidate[d] a conviction for improperly admitted prejudicial evidence,' but [the Court] maintained nonetheless 'clearly established law provide[s] that the Due Process Clause forbids the introduction of evidence so unduly prejudicial as to render a criminal trial fundamentally unfair.'" *Phansongkham*, 2025 WL 2823127 at *7 (quoting *Andrew*, 604 U.S. at 95-95). Acknowledging that *Andrew* was decided well after Phansongkham's trial, the district court made clear that it knew that *Andrew* itself was breaking no new ground: "although *Andrew* post-dates Petitioner's conviction and appeal, the Court considers *Andrew's* holding to be clearly established federal law as of 1991 (almost three decades before Petitioner's offense date)." *Id.* at *7 n.11. The Central District of California has treated *Andrew* in the same manner, relying on its elucidation of the due-process principle explained in *Payne* to evaluate the introduction of potentially unduly prejudicial evidence. *Aguilar v. Campbell*, No 2:22-cv-08798 JLS (SHK), 2025 WL 1533610 (C.D. Cal. Feb. 11, 2025) (slip op.).

This Court cannot find, and Petitioner has not directed it to, any case that has used *Andrew* in the way that he seeks: as new case law prohibiting the introduction of irrelevant evidence based on gender and sex stereotypes. Because the claim he proposes to add to his Petition was available to him at the time of his trial in 1994, and because Petitioner did not raise that claim on direct appeal, the state court will not review it. The state procedural bar prevents this court from reviewing Claim Thirty-Two, rendering it futile to allow amendment of the habeas-corpus petition.

United States District Court
Northern District of California

### C. *Rhines* Stay

Because it would be futile to allow Petitioner to add Claim Thirty-Two to his habeas petition, the Court sees no reason to keep the *Rhines* stay in place. The parties agree that all other claims have been exhausted in the state court, ECF Dkt. No. 93 at 2; ECF Dkt. No 96 at 8, so the Court will lift the stay. The parties should prepare to commence litigation in this habeas case, whether that be through additional motions or briefing. To that end, the parties should meet and confer and prepare a joint case-management statement that outlines the next steps they will take in this Court. They shall have 60 days from the date of this Order to file said statement.

## CONCLUSION

For the foregoing reasons, the Court denies Petitioner's request for leave to amend and denies his request to keep the stay for exhaustion of claims in place.

1. The motion for leave to amend the petition for a writ of habeas corpus (ECF Dkt. No. 94) is **DENIED**;
2. The motion to leave the stay in place (ECF Dkt. No. 94) is **DENIED**; and
3. All other claims having been exhausted, the Court **REMOVES** the *Rhines* stay and **DIRECTS** the parties to submit a joint case-management statement detailing the next steps in this litigation.
4. The joint case-management statement shall be due within 60 days of this Order.

**IT IS SO ORDERED.**

Dated: August 31, 2026

RICHARD SEEBORG
United States District Judge